## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRISTOPHER J. BARNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-CV-0445-CVE-SH |
| | ) | |
| VIC REGALADO, | ) | |
| JAMES BELL, | ) | |
| SMILEY ELMORE, | ) | |
| IAN NAPIER, | ) | |
| DO LYNCH, | ) | |
| AMY FLETCHER, | ) | |
| MAJOR BERRY, and | ) | |
| DR. KING, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Christopher J. Barnett, a self-represented litigant, brings this action under 42 U.S.C. §
1983, claiming numerous constitutional deprivations while he was detained at David L. Moss
Criminal Justice Center in Tulsa, Oklahoma (the "Tulsa County Jail").  Dkt. # 60.  Barnett
generally claims he was retaliated against for exercising his right to access the courts and he was
unconstitutionally denied kosher meals necessitated by his religion.  See id. at 13.[1]  Barnett also
alleges instances of discrimination, denial of access to the courts, violations of his First
Amendment right to free speech, a due process violation and violations of the Religious Land Use
and Institutionalized Persons Act.  See Dkt. # 60.  Defendants Vic Regalado, Amy Fletcher, Major
Berry, DO Lynch, Ian Napier, James Bell, and Smiley Elmore (collectively, "TCSO defendants")
move to dismiss Barnett's third amended complaint, under Federal Rule of Civil Procedure
12(b)(6), for failure to state a claim.  Dkt. # 81.  Barnett filed a response and the TCSO defendants

---

[1]    The Court's citations refer to the CM/ECF header pagination.

filed a reply. Dkt. ## 85, 88. For the following reasons, the Court grants the TCSO defendants' motion.

## I.    Standard of review

Dismissal of claims under Rule 12(b)(6) is appropriate if the facts alleged in the complaint fail to state a claim on which relief may be granted. To withstand a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if the facts alleged "raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to establish plaintiff's claim. Id. at 556; see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The complaint need not contain "detailed factual allegations," but it must contain "more than labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." Bell Atl. Corp., 550 U.S. at 555. When considering the sufficiency of the complaint, a court must accept as true all the well-pleaded factual allegations and construe them in the plaintiff's favor. Id. But the court may disregard legal conclusions or conclusory statements devoid of factual support. Id.; Iqbal, 556 U.S. at 678. When analyzing a motion to dismiss, the court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. Jojola v. Chaves, 55 F.3d 488, 494 (10th Cir. 1995).[2]

Further, when a plaintiff appears without counsel, the court must liberally construe the complaint. Hall, 935 F.2d at 1110. But even self-represented litigants bear the burden to "alleg[e]

---

[2]    Throughout his response, Barnett includes new allegations that were not included in his third amended complaint. See Dkt. # 85. The Court will not consider these new allegations, and, consistent with the Tenth Circuit's instructions, evaluates the sufficiency

sufficient facts on which a recognized legal claim could be based." Id.  This is so because the facts giving rise to the plaintiff's claims should be known to the self-represented plaintiff even if the plaintiff lacks knowledge of the specific legal theories that support his or her claims.  The rule of liberal construction merely aids the self-represented plaintiff by permitting the court to overlook basic drafting errors and confusion of legal theories in determining whether the factual allegations in the complaint can be "reasonably read . . . to state a valid claim on which the plaintiff could prevail." Id.  But the rule of liberal construction neither permits nor requires a court to assume the role of the unrepresented litigant's advocate by "supply[ing] additional factual allegations to round out a plaintiff's complaint or construct[ing] a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1175 (10th Cir. 1997).  At the motion-to-dismiss stage, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable." Straub v. BNSF Ry. Co., 909 F.3d 1280, 1287 (10th Cir. 2018) (quoting Bell Atl. Corp., 550 U.S. at 556).  Nonetheless, dismissal is appropriate "when the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." Bell Atl. Corp., 550 U.S. at 558.  The Court now turns to Barnett's third amended complaint.

## II.     Elmore

As an initial matter, Barnett fails to state a claim against defendant "Chaplin Smiley."[3]  The only allegation in the third amended complaint implicating Elmore is, "I am messianic Jewish.  In July 2023, Chaplin Smiley confirmed with the prison I am at that I am messianic Jewish and I

---

of the third amended complaint based only upon the allegations contained within its four corners.

[3]      The Court directed the Court Clerk to correct the party name of defendant "Chaplin Smiley" to "Smiley Elmore."  Dkt. # 90, at 6.

receive kosher meals." Dkt. # 60, at 20. This allegation is insufficient to state any claims for relief against Elmore, and Elmore shall be terminated from this case.

### III. Retaliation

The Court now considers Barnett's individual capacity claims against the TCSO defendants. Barnett asserts a claim for "first amendment retaliation." Dkt. # 60, at 13. As detailed below, Barnett alleges he was retaliated against for filing the instant suit. Id. at 22. "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . . [A]n inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." Fogle v. Pierson, 435 F.3d 1252, 1263–64 (10th Cir. 2006) (italics in original) (quoting Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998)); see also Allen v. Avance, 491 F. App'x 1, 5-6 (10th Cir. 2012)[4] (applying Peterson rule to pretrial detainee's retaliation claim). To prove each defendant's liability for retaliation, Barnett is required to show:

> [He] engaged in a constitutionally protected activity; (2) that the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct.

Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007). But "'[a] plaintiff's subjective beliefs about why the [defendant] took action, without facts to back up those beliefs, are not sufficient' to establish retaliatory motive." Rhodes v. Shannon, No. 23-8026, 2024 WL 79964, at *3 (10th Cir. 2024) (unpublished) (quoting Nielander v. Bd. of Cnty. Comm'rs, 582 F.3d 1155,

---

[4]    The Court cites all unpublished decisions herein as persuasive authority. FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

1165 (10th Cir. 2009)); see also Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990) ("Mere allegations of constitutional retaliation will not suffice.").

Additionally, "[i]n order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006). Barnett must "identify *specific* actions taken by *particular* defendants." Pahls v. Thomas, 718 F.3d 1210, 1226 (10th Cir. 2013) (italics in original) (quoting Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 532 (10th Cir. 2011)). Accordingly, the Court will consider Barnett's allegations against each implicated defendant.

### A. Fletcher

Barnett alleges Amy Fletcher retaliated against him because he filed suit against the jail and because he filed grievances. Dkt. # 60, at 30. Barnett alleges Fletcher retaliated against him by placing him in segregation (id.), transferring him to Okmulgee County (id.), facilitating the denial of medical care (id.), blocking his receipt of incoming emails (id. at 32-33) and denying him access to the courts by not paying for his postage or providing him envelopes (id. at 42).

Barnett fails to include sufficient allegations to satisfy the Shero elements. Barnett does not show that the challenged actions would not have occurred "but for" a retaliatory motive. Baughman v. Saffle, 24 F. App'x 845, 848 (10th Cir. 2001). He merely offers conclusory statements based upon his personal belief that he is the victim of retaliation. Nielander, 582 F.3d at 1165 ("[a] plaintiff's subjective beliefs about why the [defendant] took action, without facts to back up those beliefs, are not sufficient[.]").

Nor has Barnett "allege[d] facts necessary to support the element that any [of Fletcher's] actions would chill a person of ordinary firmness from continuing to file grievances or exercise a constitutional right." Rocha v. Zavaras, 443 F. App'x 316, 319 (10th Cir. 2011) (internal quotations and citations omitted). Fatally, Barnett's own conduct undermines the plausibility of his retaliation

5

claim against Fletcher.  This suit was initiated on October 10, 2023.  Dkt. # 1.  Since October 10, 2023, Barnett has commenced, at least, three separate actions naming Fletcher as a defendant.  See Barnett v. Okmulgee County Criminal Justice Authority, N.D. Okla. Case No. 23-CV-0545-GKF-MTS (filed December 18, 2023), Barnett v. Tulsa County Sheriffs Office et al., Tulsa Cnty. Case No. CJ-2024-649 (filed February 20, 2024), Barnett v. Tulsa County Sheriffs Office et al., Tulsa Cnty. Case No. CJ-2024-983 (filed March 6, 2025).[5]  It is obvious Barnett has not been chilled from initiating litigation, generally, or from naming Fletcher as a defendant.  For these reasons, the Court concludes that Barnett fails to state any plausible First Amendment retaliation claim against Fletcher, in her individual capacity.

    **B.  Bell**

Barnett contends "Chaplin Bell"[6] also retaliated against him for filing the instant suit and grievances.  Dkt. # 60 at 29, 32.  Barnett alleges, "[a]fter I filed this lawsuit, I was called to a meeting with Chaplin Bell.  Chaplin Bell removed me from the kosher diet claiming he had me on video giving my food away.  I deny this.  If I had not filed my lawsuit, I would not have been targeted."  Id. at 29.  Barnett further alleges, "Chaplin Bell retaliated by lying to remove me from the Kosher diet as a result of my filing grievances.  Chaplin Bell routinely denies all request for religious diets if the person does not regularly attend services."  Id. at 32.

These allegations do not sufficiently state a claim for relief.  First, Barnett does not provide specific dates, but the Court presumes Barnett intends to allege he was removed from the kosher

---

[5]    The Court may consider matters of public record, such as records from Barnett's other lawsuits, by taking judicial notice of such documents, without converting the motion to dismiss into a motion for summary judgment.  Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[6]    The Court directed the Court Clerk to correct the party name of defendant "Chaplin Bell" to "James Bell."  Dkt. # 90, at 6.

diet shortly after filing the instant suit. See Dkt. # 60, at 29. ("After I filed this lawsuit . . ."). Close temporal proximity of the complained of conduct to the protected activity alone is insufficient proof of a retaliatory motive to state a claim. See Leek v. Miller, 698 F. App'x 922, 926 (10th Cir. 2017). Second, Barnett fails to allege specific facts showing he was removed from a kosher diet because he filed this lawsuit. Frazier, 922 F.2d at 562 n. 1. Barnett's own allegations reveal there are plausible other reasons he was removed from a kosher diet: giving his food away. See Dkt. # 60, at 29. For these reasons, the Court concludes that Barnett fails to state any plausible retaliation claim against Bell, in his individual capacity.

### C. Berry

Concerning his retaliation claim against Major Berry, Barnett alleges Berry facilitated Barnett's placement in segregation without due process because he sued the jail. Dkt. # 60, at 30, 33. Beyond these conclusory allegations, Barnett offers no specific facts satisfying the Shero elements. Shero, 510 F.3d at 1203. Barnett's beliefs, without more, are insufficient to state a claim. Nielander, 582 F.3d at 1165. Barnett fails to state any plausible retaliation claim against Berry, in his individual capacity.

### D. Napier

Concerning his retaliation claim against Ian Napier, Barnett alleges, "the jail has had to speak to [Napier] in the past about his retaliatory actions against me" (Dkt. # 60, at 27) and "Napier was in charge of the J hall I was on and participated in the first amendment retaliation because he was rightfully shot for trespassing." Id. at 31. First, unlawfully shooting someone is not a protected activity. See Statement of the Case and Instructions to the Jury, Oklahoma v. Barnett, CF-2019-3570 (Tulsa Cnty. Dist. Ct. Mar. 30, 2020) (noting the Information alleges Barnett unlawfully shot Napier); see also Verdict, Oklahoma v. Barnett, CF-2019-3570 (Tulsa Cnty. Dist.

Ct. Mar. 30, 2020) (jury found Barnett guilty of assault and battery with a deadly weapon).[7]

Further, conclusory statements are insufficient to state a claim for relief, Iqbal, 556 U.S. at 678,

and these allegations lack the specific facts necessary to show retaliation. Fogle, 435 F.3d at 1263-

64. Barnett fails to state any plausible retaliation claim against Napier, in his individual capacity.

### E. Regalado

Barnett alleges, "Vic Regalado was sent several letters by me regarding all matters.

Regalado failed to take any action at all to stop the . . . first amendment retaliation of his employees.

Regalado was aware that Napier was targeting me as far back as 2022 but failed to stop the

harassment of Napier." Dkt. # 60, at 31. To the extent Barnett intends to assert a First Amendment

retaliation claim against Regalado, based upon personal liability, this claim fails because Barnett

has not shown that Regalado personally participated in the alleged constitutional violation. Brown

v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011) ("Personal liability under § 1983 must be based

on personal involvement in the alleged constitutional violation." (internal quotation and citation

omitted)).

To the extent Barnett's First Amendment retaliation claim against Regalado is premised

upon a theory of supervisory liability, Barnett must show that (1) Regalado promulgated, created,

implemented or possessed responsibility for the continued operation of a policy that (2) caused the

complained of constitutional harm, and (3) acted with the state of mind required to establish the

alleged constitutional deprivation. Brown, 662 F.3d at 1164. Barnett fails to identify any policy

that caused the retaliation, let alone one that was created by Regalado or that Regalado possessed

responsibility for its continued operation. For these reasons, Barnett does not state a retaliation

claim against Regalado, in his individual capacity.

---

[7]    The Court properly takes judicial notice of Barnett's underlying criminal case. Tal, 453 F.3d at 1264 n.24.

## IV.    Free exercise

Barnett also advances a free exercise claim arising out of his request for a kosher diet based upon his religious beliefs.  See Dkt. # 60, at 24-26, 31.  An inmate's right to free exercise of religion includes the right to a diet that conforms with their religious beliefs.  Beerheide v. Suthers, 286 F.3d 1179, 1185 (10th Cir. 2002).  To state a plausible First Amendment free exercise claim, "a prisoner must allege facts showing that officials substantially burdened a sincerely held religious belief."  Williams v. Hansen, 5 F.4th 1129, 1133 (10th Cir. 2021).  At the motion to dismiss stage, "assessment of the sincerity of [Barnett's] beliefs [is] premature," and it ordinarily is sufficient for a plaintiff to allege (1) that his beliefs are religious in nature and (2) that the defendant's conduct, or a prison policy, substantially burdened the plaintiff's religious beliefs.  Kay v. Bemis, 500 F.3d 1214, 1218-20 (10th Cir. 2007).  Barnett must also "include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests."  Ghailani v. Sessions, 859 F.3d 1295, 1304 (10th Cir. 2017) (italics in original).

Barnett alleges he is "messianic Jewish and I receive kosher meals."  Dkt. # 60, at 20.  He also alleges Tulsa County Jail previously provided him with kosher meals and he informed defendant Lynch his "deeply held religious faith requires that [he] eat kosher."  Id. at 20, 25. Liberally construing Barnett's allegations and accepting them as true, the Court concludes these allegations are sufficient, at this stage, to show that Barnett has sincerely held religious beliefs that require him to eat kosher meals for purposes of the First Amendment.  However, as explained below, the Court concludes Barnett does not assert any plausible claims under the First Amendment against the implicated defendants.[8]

---

[8]    Barnett alleges that "all defendants violated my right to free worship for exercising a clearly established right to worship as I please."  Dkt. # 60, at 31.  However, careful review of the

**A. Bell**

The Court liberally construes Barnett's claim against Bell to be two-fold. Barnett challenges: i) Bell's denial of Barnett's kosher diet request (Dkt. # 60, at 20); and ii) Bell's denial of religious diets if a person does not regularly attend services. Id. at 32. The Court first considers Barnett's allegation that Bell did not approve his request for a kosher diet in violation of the First Amendment. Id. at 20.

Barnett alleges he was not approved for a kosher diet in "October of 2023" but also alleges he received a meal that "was labeled a kosher meal" on October 13, 2023. Id. at 20, 24. He further alleges that in January 2024, he did receive kosher meals while detained at Tulsa County Jail. Id. at 30. Barnett's allegations reveal, at some point before October 13, 2023, he was approved for a kosher diet and again when he returned to the Tulsa County Jail in January 2024. Without more details, the Court cannot conclude Barnett's religious beliefs were substantially burdened by Bell's denial of his kosher diet request. The most that can be gleaned from Barnett's threadbare allegations is that the initial denial was an isolated incident. An isolated act of negligence does not support a claim for relief. Gallagher v. Shelton, 587 F.3d 1063, 1070 (10th Cir. 2009).

Concerning Barnett's allegation that Bell required inmates to attend services to receive a kosher diet, Barnett does not allege he was ever denied a kosher diet because he did not regularly attend services. Dkt. # 60, at 32 ("Bell routinely denies all request for religious diets if the person does not regularly attend services . . . . Bell is denying people their religious meals[.]"). Barnett cannot litigate claims on behalf of other inmates. Whitehead v. Marcantel, 766 F. App'x 691, 703

---

third amended complaint reveals only factual allegations regarding the kosher diet and Bell, Regalado and Lynch. Therefore, the Court analyzes Barnett's free exercise claim as to these defendants only.

(10th Cir. 2019) ("[Plaintiff] cannot sue on behalf of other inmates."). Therefore, Barnett fails to state any plausible free exercise claim against Bell, in his individual capacity.

### B. Lynch

It is unclear if Barnett intends to allege a free exercise claim against Lynch. Nevertheless, liberally construing Barnett's third amended complaint, the Court will analyze Barnett's allegations against Lynch through the lens of a free exercise claim. Barnett alleges that on October 13, 2023, Lynch served Barnett a meal labeled kosher containing rice, beans and bologna. Dkt. # 60, at 24. Barnett further explains he is allergic to rice and beans, and bologna is not kosher. Id. Lynch ultimately provided Barnett with an apple and bologna. Id. at 25. Lynch did not provide Barnett with the peanut butter packets he requested. Id. at 25-26.

This claim fails because Barnett's allegations make clear that Lynch was not personally involved in deciding what food to provide Barnett. See id. at 24-26; Brown, 662 F.3d at 1163. If anything, Barnett's allegations reveal Lynch attempted to provide Barnett with a meal that met his allergy restrictions and kosher diet needs. See id. Even if the Court assumes Lynch was personally involved in deciding what to feed Barnett, the complained of conduct is a single occurrence which is insufficient to state a claim. Gallagher, 587 F.3d at 1070. Therefore, Barnett fails to state a plausible free exercise claim against Lynch, in his individual capacity.

### C. Regalado

Concerning Regalado, Barnett alleges:

> The jail has illegal policies in place that require you to regularly attend a church, synagogue or mosque to receive religious meals. The jail denies you the right to worship as you please under the first amendment if you do not conform to their standards, not everyone attends services, but this does not mean we are not worshiping as we please. If you do not attend and cannot provide a name of a religious leader, then the jail denies you. The chaplains have been given case law showing what they are doing is illegal. I know because I had it printed and gave it to them. Sheriff Vic Regalado has allowed these illegal, unconstitutional policies

to remain in place to deny inmates their first amendment right to freely worship and to save the jail money.

Dkt. # 60, at 21 (cleaned up).  To the extent Barnett intends to assert a free exercise claim against Regalado for personal liability, Barnett does not allege any personal involvement in the alleged constitutional violation.  Brown, F.3d at 1163.  Therefore, Barnett does not state a claim for personal liability.  To the extent Barnett intends to assert a free exercise claim against Regalado premised upon supervisory liability, Barnett does not allege Regalado promulgated, created or implemented the challenged policies.  Id. at 1164.  Nor does Barnett allege Regalado possessed responsibility for the continued operation of the challenged policies.  Id.  For these reasons, Barnett does not state a free exercise claim against Regalado, in his individual capacity.

## V.    RLUIPA

In addition to his First Amendment free exercise theory, Barnett also asserts claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1 through 2000cc-5.  Dkt. # 60, at 13.  Once again, Barnett does not outline which defendants he is suing under which theories or in what capacity.  Nevertheless, as explained, it does not matter which TCSO defendants Barnett intends to assert his RLUIPA claim against because it is subject to dismissal.

To the extent Barnett is asserting an RLUIPA claim against the TCSO defendants in their individual capacities, this claim is dismissed for failure to state a claim.  "[T]here is no cause of action under the RLUIPA for individual-capacity claims."  Stewart v. Beach, 701 F.3d 1322, 1335 (10th Cir. 2012).

Further, "the only relief available . . . under the RLUIPA is declaratory and injunctive relief against defendants in their official capacities."  Warner v. Patterson, 534 F. App'x 785, 788 (10th Cir. 2013).  Barnett is no longer housed at the Tulsa County Jail.  See Dkt. # 93 (updating current

address as Allen Gamble Correctional Center in Holdenville, Oklahoma). Accordingly, any RLUIPA claim for injunctive relief against the TCSO defendants, in their official capacities, is moot. Jordan v. Sosa, 654 F.3d 1012, 1027-28 (10th Cir. 2011) (holding prisoner's claim for injunctive relief was rendered moot by prisoner's transfer to another facility); see also McGirt v. Whitten, Case No. 20-CV-157-D, 2020 WL 7635461, at *3 (W.D. Okla. Nov. 23, 2020) (unpublished) (dismissing prisoner's RLUIPA claim as moot because prisoner was transferred to federal custody subsequent to filing suit), report and recommendation adopted 2020 WL 7634062, at *1 (W.D. Okla. Dec. 22, 2020). Therefore, Barnett's RLUIPA claim against the TCSO defendants is dismissed for lack of jurisdiction. Jordan, 654 F.3d at 1023.

## VI.    Discrimination

Throughout his third amended complaint, Barnett makes passing mentions of discrimination. See, e.g., Dkt. # 60, at 27. Barnett does not set forth any legal basis for his discrimination claim. The Court liberally construes Barnett's allegations of discrimination as a Fourteenth Amendment equal protection claim. See Williams v. Carbajol, 20-CV-2119-NYW, 2021 WL 5579114, at *6 (D. Colo. Nov. 30, 2021) (construing pretrial detainee's discrimination claim as an equal protection claim). The Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike." F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920); see also Fogle, 435 F.3d at 1260 ("Equal protection is essentially a direction that all persons similarly situated should be treated alike."). "A violation of equal protection occurs when the government treats someone differently than another who is similarly situated." Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1118 (10th Cir. 1991). Therefore, to succeed on an equal protection claim, Barnett must allege that he was "similarly situated" to other detainees and that the difference in treatment was not "reasonably related to legitimate penological

interests." Fogle, 435 F.3d at 1261 (citing Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998); Turner v. Safley, 482 U.S. 78, 89 (1987)).

### A. Napier

With respect to Napier, Barnett alleges Napier "is discriminating against me and mistreating me." Dkt. # 60, at 27. Barnett continues,

> [T]he jail has had to speak to him in the past about his retaliatory actions against me. It's documented on the kiosk. Napier kept urging DO McGowen to write me up and McGowen refused. Other DO's have given me frivolous write ups to harass me. Napier was trying to deny me access to the law library as I am pro-se.

Id. at 27-28. Finally, Barnett states, "Other DO's have told me Napier is still targeting me." Id. at 28.

Here, Barnett does not allege he is a member of a protected class with respect to his claim against Napier. Thus, it appears he is alleging that he has been singled out as part of a "class-of-one." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). To state a class-of-one claim under the Equal Protection Clause, Barnett must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. The burden on a plaintiff to show similarity in class-of-one cases is "exacting," as it is "exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable." Shifrin v. Toll, 483 F. App'x 446, 449 (10th Cir. 2012). Thus, Barnett must allege facts demonstrating that he was treated differently from others who are "similarly situated in every material respect." Id. (internal quotation and citations omitted); see also Schlobohm v. Hayden, Case No. 22-CV-3314-JWL, 2023 WL 1434296, at *8 (D. Kan. Feb. 1, 2023) (unpublished) (noting that "to show that an inmate is 'similarly situated' to other inmates is arduous, if not impossible[.]").

Barnett's conclusory allegations do not establish Napier's alleged treatment of him was not reasonably related to a legitimate penological purpose. Nor did Barnett attempt to demonstrate he is similarly situated to other pre-trial detainees as required to state a viable claim. Therefore, Barnett does not state a "discrimination" claim against Napier.

### B. Lynch

Concerning his allegations against Lynch, Barnett states Lynch did not provide him with a kosher meal and "DO Lynch is discriminating against me because I am Jewish." Id. at 26. Barnett's conclusory allegations are insufficient to state a claim. See Schlobohm, 2023 WL 1434296, at *8 (finding plaintiff did not allege essential facts to support equal protection claim and reasoning that "while he mentions that he is Jewish and gay, he does not allege facts suggesting that he was treated differently because he is Jewish, and sexual orientation has not been found to be a suspect classification under the Equal Protection Clause"). If anything, Barnett's allegations suggest Lynch attempted to provide Barnett with a kosher meal (Dkt. # 60, at 25) and Lynch was not in control of the meal Barnett received. Id. Nevertheless, Barnett has not alleged specific facts demonstrating Lynch treated him differently from another, similarly situated pre-trial detainee. Fogle, 435 F.3d at 1261. Barnett does not state a "discrimination" claim against Lynch.

### VII. Access to court

Barnett alleges that "Amy Fletcher the policy director of the jail denied me access to the courts on November 6, 2023. Fletcher would tell me that the jail would no longer pay for my postage or provide envelopes for me [to] access the courts." Dkt. # 60, at 42. Access to the courts is a constitutional right. Bounds v. Smith, 430 U.S. 817, 821 (1977). To have standing to raise a claim of denial of access to the courts, a plaintiff must demonstrate actual injury. Lewis v. Casey,

518 U.S. 343, 350-51 (1996). "To do so, he must show that any denial or delay of access to the court prejudiced him in pursuing litigation." Treff v. Galetka, 74 F.3d 191, 194 (10th Cir. 1996).

Barnett does not plead or demonstrate any prejudice. Moreover, taking judicial notice of its own records, the Court finds that Barnett could not plausibly allege an actual injury.[9] On November 13, 2023, the Court received and filed Barnett's "Emergency Filing Request for Hearing" which was delivered to the Court via United States Postal Service in an envelope with proper postage. See Dkt. # 15, at 6. Since November 2023, Barnett has continued to file various motions, complaints and other filings with this Court with proper postage and arriving in an envelope. See, e.g., Dkt. # 25, at 2; Dkt. # 37, at 28; Dkt. # 50, at 5; Dkt. # 85, at 11. Therefore, Barnett does not state a claim against Fletcher for denial of access to the court.

## VIII.  Right to receive information

Barnett next alleges Fletcher violated his right to receive information while detained. Barnett alleges:

> Fletcher . . . blocked my incoming emails from friends and families that had the names[,] phone numbers and addresses of civil rights attorneys as well as criminal attorneys. I was specifically targeted as a result of filing this lawsuit and grievances. Fletcher committed first amendment censorship by blocking my emails where I was trying to obtain counsel to sue the jail and for my criminal cases.

Dkt. 60, at 32-33. Barnett does "have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or legitimate penological objectives of the prison." Jacklovich v. Simmons, 392 F.3d 420, 426 (10th Cir. 2004). However, as previously noted, Barnett must "plead facts from which a plausible inference can be drawn that

---

[9]     The Court may consider its own docket, a matter of public record, without converting the motion to dismiss into a motion for summary judgment. Tal, 453 F.3d at 1264 n.24.

the action was not reasonably related to a legitimate penological interest." <u>Gee v. Pacheco</u>, 627 F.3d 1178, 1188 (10th Cir. 2010).

Barnett's threadbare allegations regarding his incoming emails do not include sufficient facts for the Court to draw a plausible inference that Fletcher's purported blocking of his incoming emails was not reasonably related to a legitimate penological interest. These allegations leave many questions unanswered, and the Court can conceive numerous legitimate penological interests that may be served by blocking an inmate's incoming communications. Barnett fails to state a claim for violation of his First Amendment right to receive information.

## IX.    Due process

Barnett also alleges that "Berry placed me in seg with no due process. I was punished further for suing the jail and costing them more money." Dkt. # 60, at 33. The conditions of a pretrial detainee's confinement are constitutionally protected under the Due Process Clause of the Fourteenth Amendment. <u>See</u> <u>Colbruno v. Kessler</u>, 928 F.3d 1155, 1162 (10th Cir. 2019). Pretrial detainees "cannot be punished at all." <u>Kingsley v. Hendrickson</u>, 576 U.S. 389, 400 (2015). The government "may subject [a pretrial detainee] to the restrictions and conditions of the detention facility [only] so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." <u>Bell v. Wolfish</u>, 441 U.S. 520, 536-37 (1979). To determine if a pretrial detainee has been subjected to punishment, "we must ask whether an expressed intent to punish on the part of the detention facility officials exists. If so, liability may attach. If not, a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective." <u>Blackmon v. Sutton</u>, 734 F.3d 1237, 1241 (10th Cir. 2013) (internal quotations and citation omitted).

Here, Barnett does not allege an expressed intent to punish, only his subjective, conclusory belief that he was punished for filing suit. See Dkt. # 60, at 33. Nor has Barnett shown the alleged segregation did not bear a reasonable relationship to any legitimate governmental objective. Therefore, Barnett does not state a valid due process violation claim against Berry, in his individual capacity.

## X.    Qualified immunity

The TCSO defendants contend they are entitled to qualified immunity. Dkt. # 81, at 21-22. However, "[i]f a plaintiff fails to state a valid claim, [the Court] need not even reach the issue of the qualified immunity defense." Moore v. City of Wynnewood, 57 F.3d 924, 931 (10th Cir. 1995). Because Barnett fails to state a valid claim against any of the TCSO defendants, in their individual capacities, the Court will not address the issue of qualified immunity.

## XI.    Official capacity § 1983 claims

Barnett indicates he is also suing the TCSO defendants in their official capacities. Dkt. # 60, at 11-13, 45. A claim against a government actor in an official capacity "is essentially another way of pleading an action against the county or municipality" he represents and is considered under the standards applicable to § 1983 claims against municipalities or counties. Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010). To hold a county / municipality liable under § 1983, a plaintiff must demonstrate (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation (i.e. "that there is a direct causal link between" the policy or custom and the injury alleged). City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978); Bryson v. City of Okla. City, 627 F.3d 784,

18

788 (10th Cir. 2010) (citations omitted).

"When an officer deprives a citizen of a constitutional right, . . . municipal governments may incur liability under § 1983 when 'the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.'" Olsen v. Layton Hills Mall, 312 F.3d 1304, 1317-18 (10th Cir. 2002) (quoting Monell, 436 U.S. at 690). A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 482-83 (1986); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127-28, (1988). Further, the absence of a constitutional violation by the officers of a county precludes a finding of liability against the county itself. Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993).

Here, Barnett's official capacity claims fail for several reasons. First, state law is determinative of whether a particular official is one with "final policymaking authority." Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 737 (1989); McMillian v. Monroe County, Ala., 520 U.S. 781, 785-86 (1997). "Under Oklahoma law, a county sheriff is in charge of the jail and the prisoners therein." Lopez v. LeMaster, 172 F.3d 756, 763 (10th Cir. 1999), abrogated in part on other grounds, Brown v. Flowers, 974 F.3d 1178, 1182 (10th Cir. 2020); see also OKLA. STAT. tit. 19, § 513; OKLA. STAT. tit. 57, §§ 47, 52. There are no facts in the third amended complaint identifying any policy, statement, ordinance, regulation or decision officially adopted and promulgated by Regalado. And no other TCSO defendant named has final policymaking authority concerning the Tulsa County Jail.

Additionally, even liberally construed, Barnett's allegations do not plausibly show that any of his alleged injuries were caused by policies created or enforced by Tulsa County.[10]  Nor do any of his allegations plausibly show that any TCSO defendant acted or failed to act "pursuant to a 'custom' that has not been formally approved by [Tulsa County officials]" but the practice of which "is so widespread as to have the force of law."  Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-04 (1997).

Third, as explained above, Barnett failed to allege a constitutional violation by any TCSO defendant or anyone else employed at the Tulsa County Jail.  Accordingly, Barnett cannot demonstrate one essential element of an official capacity claim – that a municipal employee committed an underlying constitutional violation.  See Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998); see also Hinton, F.2d at 782.

Next, Barnett did not name Tulsa County or the Tulsa County Jail as a defendant.  See Dkt. # 60, at 2, 10-13, 60.  Nevertheless, Barnett's third amended complaint is sprinkled with allegations against "the jail."  See, e.g., id. at 20-35, 41-44.  To the extent Barnett intended to sue Tulsa County Jail, he does not state any claim against Tulsa County Jail upon which relief may be granted.  Tulsa County Jail cannot be sued in a § 1983 action because it has no legal identity separate and apart from Tulsa County.  See Hinton v. Dennis, 362 F. App'x 904, 907 (10th Cir. 2010) (stating that "governmental sub-units are not separate suable entities that may be sued under § 1983" and agreeing with district court's determination that "the Creek County Criminal Justice Center is not a suable entity under § 1983"). Therefore, Barnett fails to state any plausible claims against the Tulsa County Jail because it is not a proper defendant.  And to the extent Barnett intends to sue

---

[10]    Barnett complains of certain "jail policies" throughout the third amended complaint but does not allege Tulsa County officials created or implemented said policies.  See, e.g., Dkt. # 60, at 21.

Tulsa County by suing the named TCSO defendants in their official capacities, this attempt fails as just explained above.

Lastly, Barnett asserts he is seeking injunctive relief.  Dkt. # 60, at 5.  However, Barnett is no longer housed at the Tulsa County Jail.  See Dkt. # 93.  Therefore, any request for injunctive relief against the TCSO defendants is moot.  See Jordan, 654 F.3d at 1027-28.

For these reasons, Barnett does not state an official capacity claim against any TCSO defendant, and the Court dismisses Barnett's § 1983 official capacity claims.

**XII.   Conclusion**

Based on the foregoing, the Court concludes that the TCSO defendants' motion to dismiss shall be granted, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.

**IT IS THEREFORE ORDERED** that the TCSO defendants' motion to dismiss (Dkt. # 81) is **granted**; and **Vic Regalado, Amy Fletcher, Major Berry, DO Lynch, Ian Napier, James Bell, and Smiley Elmore are terminated as party defendants**.

**DATED** this 23rd day of June, 2025.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE